The next case up for argument is Vasquez-Garcia v. Centurion, DACA 25-2007. Counsel, we are ready for you when you're ready to proceed. May it please the Court, Claire Saunders representing Appellant Sandra Vasquez-Garcia. I'd like to attempt to reserve three minutes for rebuttal, please. The question in this case is whether Ms. Vasquez-Garcia's complaint is consistent with an accrual date for her Eighth Amendment claims that places the filing of the complaint within the statute of limitations. The answer to that question is yes, for two reasons. First, Ms. Vasquez-Garcia's complaint is consistent with the theory that a reasonable person in her position would not have known that she suffered a constitutionally salient injury until she received appropriate medical care outside of prison. Her claims are therefore timely under traditional accrual principles. Second, Ms. Vasquez-Garcia's complaint can be understood to allege a continuing violation that went on from essentially the day she entered, she was incarcerated until the day that she was released. Her complaint, filed three years after her release, is therefore timely under the continuing violation doctrine. How much of this is objective or subjective? In other words, do we look at it from a reasonable person in her position while in prison or do we look particularly at what she knew and thought? So I think it's an objective standard, Your Honor. It's a reasonable person in her position, but I think it's important that we have to take the allegations in the complaint on their face in the light most reasonable to Ms. Vasquez-Garcia. So I think the district court's error was just draw inferences against the complaint and assume that a reasonable person in Ms. Vasquez-Garcia's position would have known things that we just can't assume that she would have known. Does it cut both ways? In other words, you have to allege an Eighth Amendment violation, which requires a lot, and yet accrual cuts the other way, I didn't know very much. So I mean, I do think there's sort of an inherent tension here, which is that the standard for making out an Eighth Amendment claim is very, very high. So you can say, Your Honor, a reasonable person in the plaintiff's position wouldn't have known that they had suffered an Eighth Amendment violation, and that does set the bar relatively high when they have to actually, you know, prove facts to, you know, establish a claim for relief. And I just think that's an inherent tension here. What did the district court do wrong in that regard? As to the objective versus subjective analysis? Yes, and what we're talking about. So I think the district court took the allegations of the complaint and drew inferences against it. So for example, I have a list of four things that I think the complaint simply does not allege, and that the district court, I think, assumed that a reasonable person in Ms. Vasquez-Garcia's position would have known, but that, you know, we shouldn't assume that. So the complaint doesn't allege that Ms. Vasquez-Garcia was informed of her diagnoses in real time. The complaint doesn't allege that she understood the care that she should have been receiving. The complaint doesn't allege that Ms. Vasquez-Garcia understood the care she actually received. And the complaint also, of course, doesn't allege that Ms. Vasquez-Garcia understood the defendant's mental state. Counsel, if the inquiry is an objective one, and understanding the complaint doesn't really discuss at all what Ms. Vasquez-Garcia, what information she received or knew or what she thought, but I think part of the points the defendants are making is that any reasonable person who knows they're having these types of symptoms would know that once they bring it to the attention of the medical professionals at the facility, that they're not getting what it is that they should be getting, I mean, just at a basic level. So what's your response to that? So my response to that, Your Honor, is the distinction between sort of acute and chronic conditions like diabetes. You know, I agree. If Ms. Vasquez-Garcia had been, you know, stabbed or had a hernia or something, I think there are instances like that in the case law, or she was choking, you know, it's pretty clear to your average layperson what appropriate medical care looks like under those circumstances. I think the issue here and the problem with the defendant's argument is that the nature of Ms. Vasquez-Garcia's injuries was just such that a reasonable person in her position may not have understood what appropriate care looks like. You know, I think there are people walking down the street today who probably have diabetes and don't really know what it means to have appropriate care for that, when insulin is appropriate, when it's not, those sorts of things. And so is that also responsive to their argument that the complaint, they say, is a series of discrete acts compared with your argument towards a continuing violation? Right, exactly, Your Honor. And on the continuing violation point, I mean, I think Herrera really sort of solves this problem. In Herrera, this court said that the plaintiff suffered their injury the moment that their access to water was cut off because of someone else's failure to pay the bill. I just don't think the nature of the allegations in this complaint are such that they can be, again, construed in the light most favorable to Ms. Vasquez-Garcia. Any individual allegation could be understood in that way. So a failure to provide a diabetic diet on one day, or even for a month, would that give rise to an Eighth Amendment violation, or could have plausibly caused her injuries? I don't think so, Your Honor. Well, she knew that she was supposed to have a special diet, right? I mean, the complaint does allege that she understood that she was supposed to have a special diet, and she also understood that she wasn't getting a special diet. Right then, doesn't she have information that would indicate that they are failing to provide a diabetic diet? So, I think what the complaint alleges is that even a non-medical professional would have understood that she needed a special diabetic diet, but the complaint doesn't say anything about is what Ms. Vasquez-Garcia understood about the food that she was receiving, as opposed to the food that she should have been receiving. We don't know, for example— Well, she said it was no different. The complaint says she recognized that the food she was getting was no different than a regular diet. Am I misremembering the complaint? I don't think that the complaint says that Ms. Vasquez-Garcia understood that they were the same. I think the complaint just alleges, as a matter of fact, they were essentially the same. And I realize that's, you know, not ideal wording, but I think, you know, giving someone a piece—giving someone who's diabetic a piece of cake for dessert versus giving them a fruit cup where the fruit is soaked in corn syrup—for someone who's diabetic, those two things might actually be equally harmful, but a reasonable person in her position may not have understood that those were equally harmful diets to her. Counsel, what about the allegation, the complaint—I think it's in June of 2020 that she experienced vision loss and pain in her right eye, and then it says in July of that same year she told medical staff her eye was, quote, very painful and she had difficulty seeing. We have case law that talks about extreme pain as being a triggering point for an Eighth Amendment violation. Why wouldn't that allegation trigger an accrual? So I think that allegation doesn't trigger an accrual for a couple of reasons. One, I think there isn't the appropriate causal link to the defendant's mens rea, essentially. Two, I think that series of allegations—Ms. Vazquez-Garcia began to experience vision symptoms and she was prescribed eye drops that were essentially to relieve dry eyes. So I think, again, you know, with a 30,000-foot view with perfect hindsight, any reasonable person would say, well, you know, if you're experiencing vision loss and you have diabetes and all the other comorbidities, it's probably not, you know, an issue of dry eye. But the complaint doesn't say that Ms. Vazquez-Garcia understood that that's the treatment that she—that that was what she received. You know, she could have totally thought that the drops were of the right sort. Also, I believe— If she reports a serious medical condition that rises to the level of an Eighth Amendment violation and the prison does absolutely nothing despite her reporting this serious medical condition, that she would be on notice that she has a claim because we have plenty of cases that doing nothing is enough. I'm sorry, Your Honor, could you please repeat that question? Yes, my question is, if she reports a serious medical condition that would qualify under the Eighth Amendment and the prison does absolutely nothing in response, isn't that enough to fulfill the mens rea requirement knowledge portion also because we have plenty of case that says doing nothing meets the mens re requirement? Yes, Your Honor, I think—I wonder if you're referring to Vazquez. You know, I think—I think I essentially agree with you, but I would say we need to also know that Ms. Vazquez-Garcia understands the nature of—that the plaintiff in that case would understand the nature of the injury they were suffering. So in Vazquez, the sort of rock-bottom place where the court said the claim must have accrued was when the defendant, A, had been told that the injury he was suffering could kill him, and then, B, when a document produced in discovery showed that a medical professional sat down with the plaintiff, explained his illness and the appropriate treatment protocol at length to him, and he confirmed he understood. The court also referenced the fact that the plaintiff in that case later submitted grievances stating that he, quote, needed the treatment, and I believe there were two grievances in that case. So I think—yeah, I'll stop there. Counsel, on the accrual date, I think in your reply brief, you said that we can't even determine the date now. But what facts would be needed to determine the accrual date? So I think Mallett, the Second Circuit's decision in Mallett is very helpful here. I think we need to know what the medical providers told her and when they told her, and when they told her that. So that's why you need discovery? Yes, that's right. Well, there's also a lot of discussion that's triggered around her release date. Right. May 7th, and, of course, the defendants say it was actually May 5th. And why does the release date matter? So, Your Honor, for purposes of the traditional accrual analysis, I think the release date is not relevant. The release date is only relevant to the continuing violation theory. And, you know, I understand that there's a dispute of fact here, but we're at the motion to dismiss posture, and, you know, the district court correctly recognized that those disputes aren't appropriate to resolve in the motion to dismiss posture. With it being the continuing theory, as you say, what was the last act that would qualify under that? So I think the complaint alleges that each of the defendants had an essentially uninterrupted duty to give Ms. Vasquez-Garcia appropriate medical care, and that lasted from the day that she got to the facility until the day that she left. And so I think the last act is just going to be the failure to administer appropriate care on the day that she was released. But the last time that I believe she was saw, and I won't get this timing right, it certainly was not alleged to be the date of release. And is that reasonable? I mean, and as you know, that date matters a lot for the statute of limitations, potentially. And so is it reasonable to read the complaint to say that she would have been receiving medical care, you know, the day that she walks out of the facility and not just going through out-processing? Your Honor, I think it is. And again, for two reasons. One, this is, again, a complex chronic condition that needs to be treated every day. This isn't a broken arm where, you know, you cast it, and that's barring some, you know, bizarre series of circumstances. That's it. And then I apologize. I said there were two things, and now I don't. Oh, I apologize. I'll stop there. I see that I'm cutting into my rebuttal time, so I'll reserve the rest of my time for rebuttal. Very well. Thank you. Good morning. May it please the Court. My name is James Gruble. I represent the centurion defendants. I'm also speaking on behalf of all the defendants in this case. The defendants, centurion and Wexford, provided medical services through a contract with the New Mexico Department of Corrections to inmates in correctional facilities, including Ms. Vasquez-Garcia, and Summit Food provided the food. This appeal presents a statute of limitations question that can be resolved on the face of the complaint. Ms. Vasquez-Garcia pleads dates that she was injured, specific dates starting in 2019. And the case authority in this circuit is specifically cited under Herrera, as well as Alexander and Hammer. The relevant date is the date the plaintiff knows that she was injured. The plaintiff does not need to understand the full consequences of that injury. It's the date of injury itself. So I'm going to intend to make three points today. First, under this Court's decision in Herrera, the accrual date is based on the injury. Second, under Fernandez, if the complaint pleads sufficient facts to demonstrate that the acts took place outside of the limitations period, the district court should and really must dismiss the complaint. Second, the complaint is a 47-page, 138-detailed chronological description that affirmatively pleads knowledge of Ms. Vasquez-Garcia, note that says that she was injured. And third, the completed violation doctrine does not apply in this case. As Herrera set forth, the continuous violation doctrine may apply in a case where there's an ongoing series of events that in and of themselves do not give rise to a cause of action, but put together cause injury. That's not what we have in this case. Now, I understand that plaintiff is trying to look... And let me interrupt for a minute on Herrera. I see Herrera as very different. In Herrera, all of the injury was caused when they shut off the water. And the subsequent event that he was trying to argue to extend the time was, I asked you to turn it back on, and the city said no. His injury did not change at all based on those subsequent requests, because his full injury was they shut off his water. This is a different situation. We have a situation here where the argument is we have prior conditions that aren't being treated, or are being treated with, you know, in disregard. For a period of time that is causing additional injury. Can you tell me why that's not an important distinction? Your Honor, respectfully, I would assert that the chronic conditions of the diabetes with Ms. Vasquez-Garcia pleads that she came into the prison with. The conditions that arose are sequelae. They are symptoms. The eye, she reports visual problems in June of 2020. Again in September. She says she's seeing floaters. She goes to the medical providers and reports that. She then reports that she's got eye pain, and she's got blurry vision again in 2020. And at that point, Wexford is the provider. She's then saying that she has kidney disease. But all of these are flowing from the initial, if we're saying the trigger is that she had untreated diabetes, these are all symptoms flowing from that. And if you look at Herrera and the other cases, the focus is on when is the date of injury. It's not the date of the ongoing symptoms of that injury. Well, counsel, doesn't that cut against you? The fact that her intake into the facility showed that she had several conditions that are chronic. Diabetes, thyroid disorder, blood pressure issues. And so when we're looking at, is there a serious medical condition that occurred? And typically we'll see cases where there's a hard and fast injury. It's just whether it's serious enough. But here, the plaintiff is alleging that the baseline when she walked into the facility was she has all these conditions. And over time, there may be flare-ups and symptoms. And then it sort of details the reaction or the response and or non-response of the medical professionals. So I guess, how does the fact that she checked in with these chronic conditions help your argument that there was something that happened during that time? That would have given rise to a constitutional injury that accrued? So, Your Honor, she did report pain. She had sensitivity in her eyes. She reported temporary blindness. At that point, I think a reasonable individual would know something's going on here. Whether she knew it was constitutional or not. But that's the difference maybe also between knowledge of a symptom and an injury. And as counsel phrased it, the causation, the constitutional, the legal injury, that there's deliberate indifference towards that condition. So, Your Honor, this case is not a traditional procedural posture. As noted in the New Mexico Department of Corrections motion to dismiss on page 2, it notes that Ms. Vasquez-Garcia filed a state law claim on August 12, 2021, three months after she was released from prison. I will also note, it's not on the record, but I think if the court were to inquire, I think you could take judicial notice, that in that state law complaint, at allegations, the eighth cause of action and the ninth cause of action, Ms. Vasquez-Garcia alleges intentional infliction of emotional distress as well as conspiracy. So she's alleging, we know that in April of, in August of 2021, Ms. Vasquez-Garcia is alleging a mens rea, a mens rea, frankly, I think higher than deliberate indifference, that she was being punished by the individuals. Your Honor, I think if you look at the reasoning in Vasquez, in Herrera, and how it treated Shomo, Shomo decided a continuous violation can be attributed to a ongoing chronic disease. Herrera didn't really adopt that. Herrera says, look, we look at each case by case, and we look at what's being alleged, and we really focus on, is there an instance that we can pin the statute of limitations to? Is there a date certain? And in this case, I would assert that the date certain is starting in July and September of 2019, which reports a centurion. I also note that plaintiff in the reply brief at footnote seven says that the continuing violation doctrine would not apply to the entire of the time. That's not clarified. That certainly would be centurion because they left as pleaded in the complaint in October of 2019. And Summit Foods, the only allegations against Summit Foods are that they didn't provide the prescribed medical diet, which was only prescribed in February and August of 2019. As to Wexford, the last allegation is that Ms. Vazquez-Garcia was diagnosed with stage four kidney disease on February 22nd, 2021. So that's... Does it allege that she was notified of that diagnosis? As I read the brief, it seemed to be the argument was there's no allegation found in the face of the complaint that she was aware of that. Judge McHugh, you're correct. It does not allege that she knew. But that goes back to my point of that's why I think the court... Because otherwise, if the court's looking at sort of chronic diseases and when an inmate should know when or objectively when that person is a cause of action, it becomes problematic. If we're basing it on a release date, some inmates are in prison for long periods of time. Some never get out of prison. So the problem with plaintiff's argument is that we're allowing her essentially to get out of prison and talk to a lawyer to understand the complete nature of her injuries. I think the problem here is that we're on a 12B6 and not a 56. Because, you know, you could go and find someone in the prison who told her that she had stage 4 kidney disease on a specific date. And I think you'd have a very good argument that a claim was triggered that day. And in that way, the case reminds me, you cite Vasquez versus Davis. But in that case, we... We had 12B6 and it was after a summary judgment was entered that it came to us. And the combination of this being a 12B6 and her statute of limitations being an affirmative defense, which she has no burden to establish in her complaint, makes, in my view, your position more difficult. Judge McHugh, to respond to the 12B6, yes, plaintiff did not have the burden to plead the facts regarding the defendant's affirmative defense, but she chose to do so. She did plead facts that she was injured in 2019. But with it being 12B6, she's got to plead herself out of court, essentially on a statute of limitations. And you say she pleaded these facts, but everything in the complaint, we interpret in her favor. And so now we're having to do some gymnastics. It just seems like Rule 56 is a much smoother express way than trying to negotiate every turn and some sharp turns for every complaint allegation, and then plugging them in for what an objectively reasonable person would think with the fact that they're 20 percent of the important facts that we might want to know. That's my issue as well. Are you here too early? Understood, Your Honor. I also would just point the court to paragraph 140 of the complaint, where in, you know, and this is in regards to the continuous violation, plaintiff asserts that she had four separate harms. And she's attributing those harms to prior allegations in the complaint at prior dates. And so I understand the court's concern. But again, we are here in a posture where plaintiff had additional information. This isn't a bare bones complaint. This is a very detailed complaint. And I think that's what's different. I mean, I understand it's different than Davis procedurally, or Vazquez versus Davis procedurally. But substantively, the number of allegations, if you assume what plaintiff is pleading is true, she knew she was injured. But it says nothing about what she knew or what she was told. As to some of the things, Judge Federico, I agree in terms of what's in the medical records. But I don't think she can conceivably argue that she didn't know that she was having visual problems. Because the only way that would get into the medical record is if Ms. Vazquez-Garcia was told. Sure, that may be true. But again, as we've discussed, to have an accrual of an Eighth Amendment claim, it's kind of a high bar. And, you know, it may be, as my co-panelists have pointed out, that on summary judgment, the records will show that she was told all of these things and explain what they meant. But in the complaint, just beyond her saying vision loss and explaining some pain in her eyes in particular, you mentioned a moment ago, I thought that you said July of 2019, there was something that happened that would trigger accrual. But I guess I missed what it was. Because, again, I'm looking at the complaint, and you're right, it's very detailed. But it says nothing about what she knew or was told. It shows what she experienced, Judge. It doesn't say what she was told. So what is it about, and again, I may have misheard, July of 2019? It was June of 2019, I apologize. Is that the blurred vision? At blurred vision at 43. Paragraph 46 is she saw the two air bubbles. Paragraphs 52 and 55, she's reporting that she had worsening vision and eye pain. She's also saying that she should have been given Avastin injections, and she wasn't taken for Avastin injections. So at that time, she would have known that she wasn't getting the treatment that she asked for. Essentially, this is, I'm equating deliberate indifference with punitive damages. You can cite, what plaintiff is trying to do is separate, and saying this constitutional claim is somehow separate from the negligence claims. You cannot have deliberate indifference to medical treatment without the underlying, at least medical negligence. And I think that separates it from a more generalized, more nebulous due process violation that someone doesn't know. She knew she was injured. The extent of the injury is not relevant. And she's pleaded that she knew she was injured as early as June 2019. Thank you for your time. Any further questions? Your Honor, the questioning so far has revealed that you understand our theory of the case, so I'll just sort of try to be brief and just make a few points. First, I just want to reaffirm, it seems like you understand the injury alleged here is not a physical injury. The injury alleged here is a constitutional injury, and of course one of the predicates for that is a physical injury. But the ultimate injury, or the legally actionable injury, is constitutional here. I also agree that the real issue here is that we're here in a 12B6 posture and not a Rule 56 posture. We're asking the court, I think actually for fairly limited relief, which is just the opportunity to take some discovery. And then defendants, I think, can essentially renew, may be able to renew many of these arguments again in a summary judgment posture. So I just wanted to emphasize, I think, how sort of limited the relief that we're actually asking for is. Judge McHugh, I just actually wanted to go back to your question. I believe earlier you asked me whether if a plaintiff, Ms. Vasquez-Garcia or someone else in the deliberate indifference context, reports what they understand to be a serious injury, and then the prison does absolutely nothing about it. I just wanted to clarify that my answer to that question is, in that case, yes, their claim would have accrued under those circumstances. I think I sort of misunderstood or talked around your question, and I just wanted to come back to that briefly. Lastly, I just wanted to say that, just to emphasize, I think the district court and defendants would like it to be the case that Twombly and Iqbal apply to affirmative defenses, and they simply don't. Under this court's case in Bisline v. Parker, the question is just whether there is a conceivable set of facts that is consistent with this complaint that places the filing of the complaint within the statute of limitations. I think the answer to that question is yes. If the court has no further questions, I'll cede the balance of my time. We ask the court to reverse. Thank you.